## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

POWERHOUSE EQUIPMENT &
ENGINEERING CO., INC.,

        Plaintiff,

   v.

POWER MECHANICAL, INC. and
POWERHOUSE VALVE SERVICES,
LLC,

        Defendants.

1:18-cv-10744-NLH-JS

**OPINION**

---

**APPEARANCES:**
WILLIAM P. RUBLEY
EDWARD A. CORMA
SUBRANNI ZAUBER, LLC
750 ROUTE 73 SOUTH
SUITE 307B
MARLTON, NJ 08053

   *On behalf of Plaintiff*

DAVID J. SHANNON
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST
SUITE 300
CHERRY HILL, NJ 08002

   *On behalf of Defendants*

**HILLMAN**, District Judge

   In this matter that concerns claims of trademark

infringement, pending before the Court is Defendants' motion to

dismiss the matter for lack of personal jurisdiction.  For the

reasons expressed below, Defendants' motion will be granted, and the matter shall be transferred to the U.S. District Court for the Eastern District of Virginia.

## BACKGROUND

Plaintiff Powerhouse Equipment & Engineering Co, Inc., a New Jersey-based company, claims that Defendants, Power Mechanical, Inc. ("Power Mechanical") and Powerhouse Valve Services LLC ("PVS"), both based in Virginia, have infringed on Plaintiff's mark "Powerhouse." Plaintiff claims that beginning in 1982, Plaintiff used "Powerhouse" as a trademark, which has a distinctive flame logo, lettering, and color scheme. Plaintiff claims that in October 2016, Defendant Power Mechanical formed PVS, which Plaintiff claims markets valve repair services, plant shutdown services, valve inventory management, and sales of valves and parts. Plaintiff claims that soon thereafter, PVS, and its parent company Power Mechanical, started using the trademark "Powerhouse Valve" which has a similar flame logo design, lettering, and color scheme used by Plaintiff in its "Powerhouse" mark.

On September 6, 2018, this Court denied Plaintiff's motion for a preliminary injunction. (Docket No. 19.) The Court also dismissed without prejudice Defendants' motion to dismiss for lack of personal jurisdiction. (<u>Id.</u>) The Court directed the

2

parties to undertake limited discovery relevant to personal

jurisdiction over Defendants.[1]  (Id.)  The parties have completed

jurisdictional discovery, and Defendants have again moved to

dismiss Plaintiff's claims against them for lack of personal

jurisdiction.  In the alternative to dismissal, Defendants seek

to have the case transferred to the Eastern District of

Virginia.  Plaintiff has opposed Defendants' motion, except that

Plaintiff argues that if the Court finds that personal

jurisdiction is lacking, the Court should transfer, and not

dismiss, its case.

## DISCUSSION

### A.    Subject matter jurisdiction

This is an action for trademark infringement, unfair

competition, and dilution of trademark arising under the Lanham

Act, 15 U.S.C. §§ 1051 et seq.  Subject matter jurisdiction is

based on 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(b).

### B.    Standard for Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for

---

[1] The Federal Rules and this Circuit permit liberal discovery of
jurisdictional facts which are relevant and not privileged.
Formula One Licensing BV v. F1 New Jersey, LLC, 180 F. Supp. 3d
330, 340 (D.N.J. 2015) (citing Mass. Sch. of Law at Andover, Inc.
v. Am. Bar Ass'n, 107 F.3d 1026, 1041 (3d Cir. 1997)) (beginning
the personal jurisdiction analysis under the presumption in favor
of allowing discovery to establish personal jurisdiction).

dismissal of an action when the Court does not have personal jurisdiction over a defendant. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)). In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992) (citations omitted).

A defendant is subject to the jurisdiction of a United States district court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)(citations omitted). The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981)).

Under the Due Process clause, the exercise of personal jurisdiction over a non-resident defendant is appropriate when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  A defendant establishes minimum contacts by "'purposefully avail[ing] itself of the privilege of conducting activities within the forum State,'" thereby invoking "'the benefits and protections of [the forum State's] laws.'"  Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  This "purposeful availment" requirement assures that the defendant could reasonably anticipate being haled into court in the forum and is not haled into a forum as a result of "random," "fortuitous" or "attenuated" contacts with the forum state.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475 (internal citations omitted).

In deciding whether a defendant's contacts with a forum are sufficient to confer personal jurisdiction over that party, the Court must consider whether such contacts are related to or

arise out of the cause of action at issue in the case. The

Court may exercise specific personal jurisdiction over a

defendant where the cause of action is related to or arises out

of activities by the defendant that took place within the forum

state. <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466

U.S. 408, 414 n.8 (1984). If the cause of action has no

relationship to a defendant's contacts with a forum state, the

Court may nonetheless exercise general personal jurisdiction if

the defendant has conducted "continuous and systematic" business

activities in the forum state. <u>Id.</u> at 416.

Once the Court determines that the defendant has minimum

contacts with the forum state, it must also consider whether the

assertion of personal jurisdiction over the defendant

"comport[s] with 'fair play and substantial justice'" to satisfy

the due process test. <u>Burger King Corp.</u>, 471 U.S. at 476

(quoting <u>Int'l Shoe</u>, 326 U.S. at 320). In this regard, it must

be reasonable to require the defendant to litigate the suit in

the forum state, and a court may consider the following factors

to determine reasonableness: the burden on the defendant, the

forum state's interest in adjudicating the dispute, the

plaintiff's interest in obtaining convenient and effective

relief, the interstate judicial system's interest in obtaining

an efficient resolution of controversies, and the shared

interest of the several States in furthering fundamental substantive social policies. Id. at 477 (citing World Wide Volkswagen, 444 U.S. at 292).

In the case of an intentional tort, the "effects test" is applied.[2] The Calder "effects test" requires the plaintiff to show the following:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254, 265-66 (3d Cir. 1998) (discussing Calder v. Jones, 465 U.S. 783 (1984))). "[I]n order to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id.

---

[2] Because a trademark violation is generally considered an intentional tort, the "effects test" is applicable. AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1433 (3d Cir. 1994).

**C.   Analysis**

One significant aspect of a court's exercise of personal jurisdiction over a defendant is the court's consideration of the defendant's contacts with the forum state.  To show their contacts with New Jersey – or lack thereof - Defendants explain their corporate structure and their business activities, most of which Plaintiff does not dispute.

Power Mechanical is a family owned and operated business founded in 1985 that provides rapid support for steam and chilled water users.  Power Mechanical offers boiler rentals, boiler installation, boiler repair, burner service, mechanical contracting, steam relief valve testing, and boiler room engineering and design.  Power Mechanical leases boilers to industrial and commercial customers.  (Docket No. 39-1 at 5.)

Power Mechanical was incorporated in Virginia and maintains its principal place of business in Newport News, Virginia; its only location is in Newport News, Virginia; Power Mechanical has one hundred ten employees, all of whom work at the facilities in Newport News, Virginia; Power Mechanical has no outside sales staff; and none of its employees are dedicated to the New Jersey market.  Power Mechanical offers boiler services to customers nationwide, and currently only one of Power Mechanical's boilers is being leased to a customer in New Jersey.  (Id. at 6.)

As part of its boiler repair services, Power Mechanical rebuilds gas valves, oil valves, steam valves, blow-down valves and others that wear out and require repair or replacement, but one exception is the repair of relief valves. A boiler pressure relief valve is a safety valve designed to relieve an excessive build-up of pressure inside the boiler. If a relief valve fails, the boiler blows up. Power Mechanical does not perform relief valve repair because that work requires certifications, collectively referred to as the "VR Stamp," a process which takes approximately two and a half years to complete and entails a rigorous amount of training and testing. The market requires that relief valve repair be performed locally because relief value repair is often done on an emergency basis, requiring companies to obtain the services of a local company which can perform the work quickly. (Id.)

Powerhouse Valve Services, LLC was formed in 2016 specifically for the purpose of performing relief valve repair. PVS is a Virginia limited liability company that maintains its principal place of business in Newport News, Virginia and has five employees. PVS obtained the VR Stamp certification in mid-2018. PVS primarily services Power Mechanical, which is essentially Powerhouse Valve's only customer. Previously, Power Mechanical subcontracted its relief valve servicing to

local vendors.  PVS performs the work for Power Mechanical in its shop in Virginia before it leaves the shop.  (<u>Id.</u> at 7.)

With regard to PVS's contacts with New Jersey, PVS states:

- PVS performs valve work only in its machining and testing facility in Newport News, Virginia.

- PVS does not perform relief valve services outside of its machine shop in Newport News, Virginia, because PVS can only perform relief valve repair work in Virginia pursuant to its certification.

- PVS cannot perform any repairs in New Jersey.

- PVS has not performed any repairs in New Jersey.

- In 2018, there were only four customer orders to PVS that were not placed by Power Mechanical.

- PVS only markets to the region within two hundred fifty miles of its location in Newport News, Virginia, which includes North Carolina, Washington D.C. and Maryland.

- PVS advertises and promotes itself only though its website, a paper flier handed out at local trade shows, and word-of-mouth within sixty miles of its facilities.  The flier distributed at trade shows consists of a single four-by-six card made available at the Power Mechanical booth.

- PVS does not advertise, promote or market its services in New Jersey.  None of its advertising, marketing or

promotional materials have been distributed in New Jersey.

- PVS has not made any sales to any customers in New Jersey.

(Id. at 8-9.)

Plaintiff does not necessarily dispute PVS's contacts – or lack of contacts – with New Jersey.  Instead, Plaintiff focuses on Power Mechanical's contacts with New Jersey, and argues that because PVS is simply an alter ego of Power Mechanical, all of Power Mechanical's contacts with New Jersey can be imputed to PVS.  Plaintiff argues that PVS is nothing more than Power Mechanical's machine shop, and whether viewed from an agency standpoint or a veil-piercing standpoint, Power Mechanical controls the activities of PVS, including the adoption and use of the infringing trademark.  Thus, because Power Mechanical completely controls PVS, Plaintiff argues that it is Power Mechanical's contacts with New Jersey that matter for purposes of jurisdiction.

As to Power Mechanical's contacts with New Jersey, Plaintiff contends:

- Power Mechanical conducts substantial business in locations throughout New Jersey.

- Power Mechanical provides boiler rentals lasting several months, it bids for projects in New Jersey, it buys used boilers from New Jersey, and it sells equipment to

customers in New Jersey.

- Power Mechanical communicates with New Jersey customers and assists with state-specific concerns such as welding certification requirements.

- The than 4000 pages of discovery prove that Power Mechanical has purposely availed itself of this forum through its repeated business transactions with New Jersey customers.

- Plaintiff and Power Mechanical compete for the same customers in New Jersey and elsewhere.

- Power Mechanical sells equipment directly to Plaintiff in New Jersey.

- "Power Mechanical has adopted a mark for its department Powerhouse Valve that infringes on Plaintiff's rights.  It cannot be said that Power Mechanical is being unexpectedly haunted by its frequent boiler sales and rentals in New Jersey by being made to defend a trademark infringement suit against a competing New Jersey-based boiler company in a New Jersey court.  The suit is directly related to the competition between the two companies, which includes significant business conducted in New Jersey.  Power Mechanical enjoys the benefits and protections of New Jersey's laws when it rents and sells boilers and related equipment to customers in New Jersey.  It is perfectly fair

and reasonable for this Court to exercise jurisdiction over Power Mechanical in a suit concerning trademark infringement against a major New Jersey-based competitor." (Docket No. 41 at 30-31, 32-33.)

In response, Defendants reject Plaintiff's argument that PVS is a mere instrumentality or agent for Power Mechanical, but even if it were, Defendants argue that Plaintiff's position is an attempt to support general jurisdiction rather than specific jurisdiction. Defendants contend that Plaintiff cannot establish general jurisdiction under the facts or the law, and Defendants further contend that the fatal flaw in Plaintiff's argument is the lack of any evidence that Defendants purposefully directed their use of the allegedly infringing trademark to New Jersey.

The Court agrees with Defendants. With regard to Plaintiff's argument that Power Mechancial may be considered one-and-the-same as PVS such that Power Mechanical's contacts may be imputed to PVS, the U.S. Supreme Court has squarely rejected such a position in all but the most extraordinary circumstances. In Daimler AG v. Bauman, 571 U.S. 117, 121 (2014), a group of Argentinian plaintiffs filed suit against in California against Diamler, a German company that manufactures Mercedes-Benz vehicles in Germany, arising out of alleged human

rights violations that occurred Argentina. Jurisdiction over

the lawsuit was predicated on the California contacts of

Mercedes-Benz USA, LLC (MBUSA), a subsidiary of Daimler

incorporated in Delaware with its principal place of business in

New Jersey. MBUSA distributed Daimler-manufactured vehicles to

independent dealerships throughout the United States, including

California.

After a period of jurisdictional discovery, the district

court dismissed the complaint for lack of personal jurisdiction.

The district court found Daimler's own affiliations with

California were insufficient to support the exercise of all-

purpose jurisdiction over the corporation, and the district

court declined to attribute MBUSA's California contacts to

Daimler on an agency theory, concluding that plaintiffs failed

to demonstrate that MBUSA acted as Daimler's agent. Daimler,

571 at 124.

After the Ninth Circuit reversed the district court, the

Supreme Court granted certiorari. Id. The Supreme Court noted

that it had not yet addressed whether a foreign corporation may

be subjected to a court's general jurisdiction based on the

contacts of its in-state subsidiary, but it observed that the

Ninth Circuit's agency theory appeared "to subject foreign

corporations to general jurisdiction whenever they have an in-

state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in Goodyear [Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 929 (2011).]" Id.

The Supreme Court continued, finding "[e]ven if we were to assume that MBUSA is at home in California, and further to assume MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." Id. at 136. The Supreme Court explained that "Goodyear made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there"; "for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Id. (citations omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction," and "[t]hese bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." Id. at 137 (quotations, citations, and alterations omitted).

The Supreme Court reiterated that for general jurisdiction the focus is not on where the corporation "engages in a substantial, continuous, and systematic course of business," which is the standard for specific jurisdiction, but instead "instances in which the continuous corporate operations within a state are so substantial and of such a nature as to justify suit on causes of action arising from dealings entirely distinct from those activities." Id. at 138 (quotations, citations, and alterations omitted). In other words, the Supreme Court explained that all-purpose jurisdiction concerns whether the corporation's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." Id. (quotations, citations, and alterations omitted).

The Supreme Court concluded:

> [N]either Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

Id. at 139 (citation omitted).

In this case, even if the Court viewed PVS to be an agent or instrumentality of Power Mechanical, Plaintiff has not

demonstrated that Power Mechanical can be considered "at home" in New Jersey. Just like Daimler and MBUSA, neither Power Mechanical nor PVS is incorporated in New Jersey or has a principal place of business in New Jersey. Power Mechanical's contacts with New Jersey as described by Plaintiff concern general business activities of selling boilers, which do not relate to Plaintiff's claims of trademark infringement. Moreover, Power Mechanical's contacts cannot be classified as so substantial that they are akin to being a New Jersey-based company. "'A corporation that operates in many places can scarcely be deemed at home in all of them.'" Malik v. Cabot Oil & Gas Corporation, 710 F. App'x 561, 564 (3d Cir. 2017) (quoting Daimler, 571 U.S. at 139 n.20) (further explaining that "[o]therwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States").

As the Third Circuit has recognized, it is "'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'" Malik, 710 F. App'x at 564 (quoting Chavez v. Dole Food Company, Inc., 836 F.3d 205, 223 (3d Cir. 2016) (quoting Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 432 (5th Cir. 2014)). Power Mechanical's performance of

17

its boiler services in New Jersey, among other states, does not make this the "exceptional case" to extend general jurisdiction to an entity that is not incorporated in New Jersey and does not have any places of business in New Jersey. See Daimler, 571 U.S. at 139 n.19 ("We do not foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State. But this case presents no occasion to explore that question, because Daimler's activities in California plainly do not approach that level. It is one thing to hold a corporation answerable for operations in the forum State, quite another to expose it to suit on claims having no connection whatever to the forum State.").

Without the availability of general jurisdiction, Plaintiff must establish specific jurisdiction over the Defendants in order to maintain its case in this Court. Plaintiff must show that (1) Defendants purposefully availed themselves of the privilege of conducting activities in New Jersey, Asahi Metal Indus., 480 U.S. at 109; (2) Defendants' contacts with New Jersey arise from their alleged use of Plaintiff's trademark, Helicopteros, 466 U.S. at 414; and (3) Defendants expressly aimed their tortious conduct at New Jersey such that this forum

constitutes the focal point of the tortious activity, IMO Industries, 155 F.3d at 266.

Plaintiff has not shown that Defendants' alleged use of Plaintiff's trademark in the marketing for PVS is specifically directed to New Jersey. Plaintiff does not refute that PVS does not perform relief valve work outside its machine shop in Virginia, and that PVS has not, and cannot, perform any repairs in New Jersey because of the special certification requirement. Plaintiff also does not refute that PVS is only marketed to the region within two hundred fifty miles of its location in Newport News, Virginia, which includes North Carolina, Washington D.C. and Maryland, but not New Jersey. To the extent that Power Mechanical's website and trade show flier reveal or link customers to the allegedly infringing PVS logo, Plaintiff has not pointed to any evidence that Defendants have purposefully targeted New Jersey in those marketing materials.

In addition to PVS's complete lack of any contact with New Jersey whatsoever, PVS's alleged use of Plaintiff's trademark in PVS's relief valve services is unrelated to the contact Power Mechanical has with New Jersey because Power Mechanical does not perform relief valve repair in New Jersey. Additionally, any presence of the allegedly infringing logo used by PVS in New Jersey is incidental – and far from directly targeted to New

19

Jersey - because PVS has not and does not do any relief valve repair work in New Jersey.

In short, Plaintiff has not met its burden of showing that the Virginia-based Defendants' alleged use of its trademark has been expressly aimed at New Jersey so that this Court may exercise personal jurisdiction over them.

At this juncture, the Court must decide whether to dismiss Plaintiff's complaint or transfer it to another court that can exercise personal jurisdiction over Defendants. The applicable statutory provision is 28 U.S.C. § 1631, which governs transfer when there is "a want of jurisdiction." See Chavez, 836 F.3d at 224 (explaining that where a court determines that personal jurisdiction over the defendants is lacking, the determination of whether to dismiss or transfer is governed by 28 U.S.C. § 1631 and not 28 U.S.C. § 1406(a), which concerns improper venue). Section 1631 provides in relevant part:

> [Where a] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 ("Transfer to cure want of jurisdiction").

In this case, Defendants concede that personal jurisdiction

exists over them in the U.S. District Court for the Eastern District of Virginia.  The Court does not find any factors that compel the harsh result of dismissal rather than transfer.  See, e.g., Chavez, 836 F.3d at 224 (affirming the district court's finding that the defendant was not "at home" in Delaware under general jurisdiction, but reversing the district court's dismissal, rather than transfer, of the action, finding that the interests of justice supported transfer, particularly when the plaintiff sought transfer to New Jersey in the event that the district court determined that personal jurisdiction was lacking in Delaware).  Consequently, the Court will transfer the action to the Eastern District of Virginia.

### CONCLUSION

For the reasons expressed above, the Court finds that personal jurisdiction over Defendants for Plaintiff's claims against them is lacking.  The Court will transfer the case to the U.S. District Court for the Eastern District of Virginia. An appropriate Order will be entered.


Date:  July 25, 2019              s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.